IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


FREDRICK PIPPERT, and                    Civil No. 06-6130-AA
MARIANNE PIPPERT,                            OPINION AND ORDER

       Plaintiffs,


    vs.

JOHN NIECE, RENTAL COLLECTION SERVICES,
CENTURY APARTMENTS, LLC, and
NORRIS & STEVENS, INC.,

       Defendants.
_____

Keith D. Karnes
Olsen, Olsen & Daines
1599 State Street
P.O. Box 12829
Salem, OR 97309-0829
    Attorney for the plaintiffs

Anne D. Foster
David P. Rossmiller
Dunn Carney Allen Higgins & Tongue LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
    Attorneys for the defendants

AIKEN, Judge:

Defendants filed a motion for summary judgment or, in the alternative, partial summary judgment, asserting they are entitled to judgment as a matter of law on plaintiffs' claims for violation of the Fair Debt Collection Practices Act ("FDCPA"), tortuous interference with economic relations, breach of contract, defamation, violation of Oregon's Unlawful Debt Collection Practices Act ("UDCPA"), and intentional infliction of emotional distress ("IIED"). Plaintiffs concede defendants' motion for summary judgment on their IIED claim. Plaintiffs filed a cross-motion for summary judgment asserting they are entitled to judgment as a matter of law on their claims pursuant to the FDCPA, the UDCPA, and for defamation. The court heard oral argument on October 1, 2007. Defendants' motion is granted in part and denied in part. Plaintiffs' cross-motion is denied.

BACKGROUND

Plaintiffs, Fredrick Pippert and Marianne Pippert, entered into a contract with defendant Century Apartments, LLC, d.b.a. McNary Heights Apartments ("McNary") by signing a rental agreement. McNary contracted with defendant Norris & Stevens, Inc. ("Norris"), a property management company, to act as its agent and to "rent, manage, and operate" McNary Heights Apartments. Defendant John Niece served as on-site manager of the apartment complex at the time of the events at issue.

Page 2 - OPINION AND ORDER

Plaintiffs, pursuant to the rental agreement with McNary, were to make rent payments payable to "Norris & Stevens Realtors, Inc." Rental Collections Services ("RCS") is a division of Norris. RCS regularly and exclusively collects debts for Norris.

Plaintiffs were participants in the Salem Housing Authority (the "Authority") Section 8 Housing Program. The Section 8 Program provided financial assistance to plaintiffs in the form of partial rent payments. Pursuant to the Section 8 Program, plaintiffs signed an agreement with the Authority to meet all of their requirements for assistance as set forth by the Authority.

Plaintiffs admit that prior to renting to plaintiffs, McNary was required to enter into a contract with the Authority in order to receive partial payment of plaintiffs' rent from the Authority. The contract between McNary and the Authority required McNary to inform the Authority of the following: (1) when plaintiffs vacated the apartment; (2) the condition of the apartment upon vacating; and (3) any debts owed by plaintiffs to McNary.

The plaintiffs occupied the McNary apartment from May 2003, until January 2006. Defendants underscore the following events which preceded termination of plaintiffs' lease. First, Norris assessed fines to plaintiffs. The first fine was for dumping two couches by the trash receptacle, fined $25.00. The second fine was for leaving a bike in a common area, fined $20.00. Next, on

November 23, 2005, Niece received three separate noise complaints regarding the high volume of plaintiffs' stereo that turned on via an automatic timer while the plaintiffs were out of town. Niece eventually contacted the police who entered plaintiffs' apartment to turn off the stereo. During the police entry three cats were found, the possession of which violated plaintiffs' Rental Agreement. Niece assessed a third fine against the plaintiffs after this incident in the amount of $30.00 for noise violation and notified plaintiffs of the pet violation. All three fines were paid in full by plaintiffs prior to vacating the apartment.

On November 29, 2005, Niece presented plaintiffs with the option of voluntarily terminating their lease to avoid a fourth landlord eviction on their record. Initially, plaintiffs gave notice of their intention to vacate, however, they later changed their minds and did not vacate the apartment. On December 13, 2005, plaintiffs were given notice that their lease had been terminated and that they must vacate the apartment by January 31, 2006. Additionally, a letter was received by Niece on December 5, 2005, stating that plaintiffs' housing assistance payments would be terminated on December 31, 2005, and that in the event of excessive damage to the residence to contact the Housing Authority Inspector. Niece subsequently contacted the Inspector to report excessive damage to plaintiffs' apartment. On February

2, 2006, the Inspector, along with Niece, inspected the apartment.  Plaintiffs admit that this inspection was required by the Section 8 Program.

On February 16, 2006, Niece initially assessed repair costs in the amount of $5,439.72  This assessment included estimates of repair costs.  State law requires that any damages assessed to tenant must be billed within 30 days of move out.  On March 24, 2006, Norris reduced the amount to $5351.72.  That amount was then reduced to $5221.67, to reflect a calculation error by Norris.

RCS sent plaintiffs three standard collection letters to collect payment for the damages plaintiffs caused to the apartment.  The letters were on letterhead that stated in prominent text: "Rental Collection Services."  Below the prominent text, in smaller fine print, the letterhead stated, "A division of Norris and Stevens, Inc."  The letter instructed the plaintiffs to "contact the Collection Department of Rental Collection Services" to arrange payments.  The damages were itemized on the letter. Below the listed damages was a paragraph in fine print.  The first line explained that the paragraph was included pursuant to federal law.  The paragraph contained the statements required by the FDCPA in all collection letters. Finally, at the bottom of the letter plaintiffs were instructed to "write the RCS Account number" on their check and  mail the

payments to "Rental Collection Services."

On February 6, 2006, the Authority issued a letter to plaintiffs indicating its intent to revoke plaintiffs' housing assistance due to excessive damage to the apartment.  On May 5, 2006, the Authority held a hearing to decide whether to cancel the assistance.  The Authority determined that the assistance had been properly terminated but agreed to continue making housing assistance payments pending the filing and outcome of this litigation.

<u>STANDARDS</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©).  Substantive law on an issue determines the materiality of a fact.  <u>T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.</u>, 809 F.2d 626, 630 (9th Cir. 1987).  Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 323 (1986).  If the moving party shows the absence

of a genuine issue of material fact, the nonmoving party must go

beyond the pleadings and identify facts which show a genuine

issue for trial.  Id. at 324.

Special rules of construction apply when evaluating summary

judgment motions: (1) all reasonable doubts as to the existence

of genuine issues of material fact should be resolved against the

moving party; and (2) all inferences to be drawn from the

underlying facts must be viewed in the light most favorable to

the nonmoving party.  T.W. Electrical, 809 F.2d at 630.

DISCUSSION

## Violation of the FDCPA

Plaintiffs' Complaint initially alleged violations of the

FDCPA by all defendants, however, plaintiffs later conceded that

neither Niece nor McNary acted as debt collectors as defined by

the FDCPA.

I agree with plaintiffs, however, that Norris and RCS may

arguably fall within the FDCPA definition of debt collectors.

The FDCPA was created to regulate third-party debt collectors,

and not the original creators of debt.  Aubert v. America General

Finance, Inc., 137 F.3d 976, 978 (7th Cir. 1998).  Congress

suggests that the difference between a creditor and a collection

agency is significant.  Congress explicitly sought to exclude

creditors from the FDCPA's coverage because creditors are

typically restrained by desire to protect their good will when
collecting past due accounts.  <u>Kimber v. Federal Fin. Corp.</u>, 668
F.Supp. 1480, 1485 (M.A.Ala. 1987) (citing S.Rep. No. 95-382,
95th Cong., 1st Sess., reprinted in 1977 U.S.C.C.A.N. 1695, 1697).
Defendants argue that Norris as the originator of debt, and RCS
as a division of Norris, are creditors and therefore the FDCPA
regulations do not apply to them.

A creditor, however, falls within the definition of a debt
collector when, "in the process of collecting his own debts, uses
any name other than his own which would indicate that a third
person is collecting or attempting to collect such debts."  15
U.S.C. § 1692a(6).  This exception was enacted to recognize that
the seriousness of one's debts increases once the original
creditor turns the debt over to a third party for collection.
Congress believed that in giving the appearance that a third
party is collecting the debt, it can be assumed that the creditor
is attempting to create more pressure on the debtor to pay his or
her debt.  Here, Norris sent letters attempting to collect the
debt on the letterhead described above.  The court must determine
whether, as a matter of law, the correspondence was such that it
identified Norris and/or RCS as debt collectors.  The Federal
Trade Commission has issued commentary on the issue of creditors'
correspondence with debtors.  The commentary states that a
creditor is a debt collector for purposes of this Act if: "The

creditor's collection division or related corporate collector is
not clearly designated as being affiliated with the creditor;
however, the creditor is not a debt collector if the creditor's
correspondence is clearly labeled as being from the 'collection
unit of the (creditor's name),' since the creditor is not using a
'name other than his own' in that instance." Federal Trade
Commission Statements of General Policy or Interpretation Staff
On The Fair Debt Collection Practices Act, 53 Fed.Reg. 50097,
50107 (1988).

The court reviews disputes arising under the FDCPA using the
"least sophisticated debtor" standard. Van Westrienen v.
Americontinental Collection Corp., 94 F. Supp. 2d 1087, 1099 (D.
Or. 2000).

There is limited case law in Oregon on this issue. One
recent case found that a creditor was not a debt collector when
the creditor notified the debtor that the creditor was changing
its name from WFS to Wachovia Dealer Services. Porter v.
Wachovia Dealer Services, 2007 WL 2693370, *4 (D. Or. 2007). The
notice read: "It's official. Our new name is Wachovia Dealer
Services. In 2006, WFS Financial joined the Wachovia family and
our name is not Wachovia Dealer Services..." Id. Further,
financial statements received by the debtor after that point had
Wachovia's name on them as well as directing the debtor to make
payments to Wachovia. Id. Using the least sophisticated

consumer standard, the court found the debtor would not have been misled to believe that Wachovia was a debt collector and not the holder of his loan.  Id.

Because this jurisdiction has limited authority on the use of a different name on letterhead, the court looks to other jurisdictions for persuasive authority on the issue.  One court noted that the size of text was important.  See Meads v. Citicorp Credit Services, Inc., 686 F. Supp. 330, 332 (S.D. Ga. 1988).  That court stated, "the written communications were on CCS Collection stationary, which include a *prominent* graphic stating: 'A Division of Citicorp Credit Services, Inc.'" Id. at 332 (emphasis added).  Meads found as a matter of law that Citicorp was not a debt collector.

Alternatively, another court held that where a creditor generated a letter signed by an attorney and the attorney did not control or supervise the process by which the letter was sent, there the creditor was using a name other than its own. Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236-37 (5th Cir. 1997).  The court held those circumstances indicated that a third person was, in fact, collecting or attempting to collect such debts.  Id.

Finally, the case this court finds most persuasive involves Citicorp issuing letters from a unit of Citicorp responsible for delinquent accounts.  Maguire v. Citicorp Retail Services, 147

F.3d 232, 234-35 (2nd Cir. 1998). This unit was called "Debt Assistance." Id. at 234. The top of the letter stated "Debtor Assistance Agency Control Unit." Id. The letter was signed by an individual with the job title "Debtor Assistance Agent." Id. Maguire noted that "a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage, but it should use a name that it usually transacts business with or a commonly used acronym." Id. at 235 (citing Federal Trade Commission Statements of General Policy or Interpretation Staff On The Fair Debt Collection Practices Act, 53 Fed.Reg.50097, 50107 (1988)). The court held whether a least sophisticated consumer would have known that the Debtor Assistance letter was from Citicorp was a fact to be determined by a fact finder. Id. at 236. The Maguire court relied on the following facts: (1) prior correspondence between Citicorp and Maguire did not establish, or even suggest, that Citicorp was affiliated with Debtor Assistance; (2) although the phone line was paid for by Citicorp, the person that answered the phone when the debtor called the number identified himself as an employee of Debtor Assistance; and (3) the name of "Debtor Assistance" is not so closely related to "Citicorp" that renders it obviously related. Id.

Similarly, the facts before this court indicate that such a determination cannot be made as a matter of law. The letterhead

identifies a name that had not previously been used to represent Norris.  Although the letterhead indicates that it is a division of Norris and Stevens, Inc., the court finds the text at issue is not "prominent."  A question of fact remains as to whether the size of the font is too small and therefore insignificant to a least sophisticated consumer, or whether the type is sufficiently prominent at the top of the letter thereby notifying the least sophisticated consumer of the relationship between the two entities.

Further, according to the rental agreement and the McNary-Norris agreement, tenants were to make payments directly to Norris.  In the letter from the RCS division, the text of the letter states, "For payment arrangements you must contact the Collection Department of Rental Collection Services..."  The letter directs the debtor to write the RCS account number on the check and then mail the check to RCS.  The language and presentation of the letter do not give the appearance that RCS is the collection division of Norris.  To the contrary, the letter instructs the former resident to contact the collection division of RCS, arguably suggesting to the least sophisticated consumer that RCS is a separate entity with a separate collection department.

Lastly, the paragraph included text required by federal law indicating that Norris/RCS were aware that they may be viewed as

a "debt collector" under federal law.  If Norris/RCS were aware it might appear as a debt collector, it certainly had the opportunity to clarify that it was not in fact a debt collector. Rather than stating clearly that RCS was a division of Norris in the text of the letter, or putting the letter on Norris letterhead, it chose instead to include the required language for a FDCPA "debt collector."  When considering these facts, a question of disputed fact remains as to whether a least sophisticated debtor might have believed RCS to be a third party collecting debt for Norris.

Defendants' motion for summary judgment on plaintiff's claim pursuant to the FDCPA is granted in part as to defendants McNary and Niece, and denied as to defendants Norris and RCS. Plaintiffs' cross-motion for summary judgment on this issue is also denied.

Tortuous Interference

Plaintiffs' claim for intentional interference with economic relations fails as a matter of law.  To succeed on this claim plaintiffs must prove: 1) the existence of a professional or business relationship; 2) intentional interference with that relationship; 3) by a third party; 4) accomplished through improper means or for an improper purpose; 5) a causal effect between the interference and the harm to the relationship; and 6) damages.

Plaintiffs allege that due to defendants' actions their relationship with the Housing Authority was harmed. However, this court is unaware of any evidence supporting plaintiffs' allegation that any alleged interference by defendants was accomplished through improper means or for an improper purpose. Plaintiffs argue that defendants' actions of informing the Authority of property damage and termination of their tenancy interfered with plaintiffs' benefits. The agreement between McNary and the Housing Authority, however, requires that the Housing Authority have access to McNary's records relating to requirements for assistance. Therefore, I find no evidence that the alleged interference occurred through improper means or for an improper purpose.

Plaintiffs also fail to provide evidence that defendants' communication or actions caused damage to their economic relation with the Authority. The letter from the Authority to the plaintiffs clearly explain that the reason assistance was discontinued was due to property damage caused by the plaintiffs to their apartment. It is reasonable to assume that had the plaintiffs not damaged the apartment, the Housing Authority would not have discontinued assistance. Moreover, plaintiffs' argument that because defendants did not go out of their way to prevent the Housing Authority from finding out about the damages, constitutes a claim for intentional interference, is without

merit.

Defendants' motion for summary judgment on plaintiffs' claim for intentional interference with economic relations is granted, and this claim is dismissed.

Breach of Contract

Plaintiffs next allege breach of contract, including a breach of good faith and fair dealing, based on defendants' action in threatening to evict plaintiffs, charging plaintiff fees not allowed by law, and charging plaintiffs for normal wear and tear on the apartment.

First, while there is evidence that plaintiffs were given the option to voluntarily vacate their apartment, it appears that defendants were legally entitled to terminate the lease due to plaintiffs' violations of the Rental Agreements.

Second, although the fees charged to plaintiffs were not explicitly provided for in the rental agreement, the contract does not restrict defendants from charging any fees that were not listed. Oregon law allows the landlord to charge a fee for "noncompliance by the tenant with a written rental agreement that provides for a fee for that noncompliance, provided that the fee may not be excessive." Or. Rev. Stat. § 90.302(d). While the landlord may have failed to list the fees in the rental agreement, I find no evidence or authority that charging the fees is a breach of the rental agreement.

Third, the court finds no merit in plaintiffs' argument that defendants' charges for wear and tear constitute a breach of contract. The Rental Agreement explicitly states that the "landlord's definition of normal wear and tear shall be what would result in a reasonable occupancy and use of the premises." The court finds that during a two and a half year occupation, damages to the apartment were excessive. Plaintiffs offer no evidence that the damages are normal wear and tear. Moreover, after reviewing the receipts, the court cannot find any egregious miscalculation to indicate that the landlord is demanding unreasonable repairs or exaggerating the cost of the required repairs. Some of the listed damage includes: (1) replacement of carpet due to staining, pet damage, burns, and flea infestation; (2) replacement of all the vinyl due to rips and gouges and water damage; (3) replacement of kitchen counter tops; (4) replacement of the stove; and (5) replacement of numerous doors. A dispute as to the amount charged for repairs does not state a claim for breach of contract.

Finally, plaintiffs allege defendants breached the duty of good faith and fair dealing in upholding the rental agreement. Whether such a duty has been violated depends on whether the parties' reasonable expectations were contravened. Uptown Heights Associates Limited Partnership v. Seafirst Corp., 891 Or. 639, 644-645, 891 P.2d 639 (1995). The expectations are held to

an objective standard.  <u>Id.</u> at 645.  As stated above, none of
defendants' actions can be objectively viewed as contravening
plaintiffs' expectations.

Therefore, defendants' motion for summary judgment on
plaintiffs' breach of contract claim is granted, and this claim
is dismissed.

<u>Defamation</u>

A claim of defamation requires a showing that the defendant
made a defamatory statement that was false and communicated that
statement to a third party.  <u>Affolter v. Baugh Const. Oregon,
Inc.</u>, 183 Or. App. 198, 202, 51 P.3d 642 (2002).  A statement is
defamatory if it is a factual assertion that tends to subject the
plaintiff to "hatred, contempt, or ridicule" or tends to
"diminish the esteem, respect, goodwill, or confidence" that a
substantial and respectable part of the community previously
viewed the plaintiff.  <u>Reesman v. Highfill</u>, 327 Or. 597, 603, 965
P.2d 1030 (1998).

Plaintiffs' allege that defendants' statements to the
Authority were defamatory because the amount of debt is disputed
by the parties.  This court is unconvinced that the mere
difference in amount of some of the charges is sufficient to
state a claim for defamation.

Further, any statements made by defendants to the Housing
Authority were clearly required by the contract between McNary

and the Housing Authority, as admitted by the plaintiffs.
Therefore, defendants' motion for summary judgment on plaintiffs'
claim for defamation is granted, and this claim is dismissed.

Violation of the UDCPA

The UDCPA defines "debt collector" differently than the
FDCPA.  A debt collector, under the UDCPA, is defined as "any
person who by any direct or indirect action, conduct or practice,
enforces or attempts to enforce an obligation that is owed or due
to *any* commercial creditor, or alleged to be owed due to any
commercial creditor, by a consumer as a result of a consumer
transaction."  Or. Rev. Stat. § 646.639 (emphasis added).  Unlike
the FDCPA, the UDCPA does not require that the debt collector
collect debt "due to another."

All the defendants, Niece, McNary, Norris, and RCS, either
directly or indirectly attempted to enforce the plaintiffs'
obligation.  The next inquiry is whether the statute was
violated.  While plaintiffs argue that Or. Rev. Stat.
§ 646.639(m),(n) were violated by defendants, the court remains
unconvinced.  Or. Rev. Stat. § 646.639(m) prohibits the
representation that the existing debt may be increased by the
addition of any attorney fees, investigation fees or any other
fees or charges when such fees or charges may not be legally
added to the existing debt.  Plaintiffs have offered no evidence
that this occurred.  Although plaintiffs disagree as to the

amount of debt, there is no evidence that defendants represented the debt would be increased by fees that may not be legally added to the existing debt.

Or. Rev. Stat. § 646.639(n) prohibits the collection or attempt to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law. This violation would be applicable to McNary and Niece. Plaintiffs allege that they were charged fees by defendants that were not expressly allowed by contract or statute. These fees include $30 for excess noise, $25 for unauthorized dumping, and $20 for leaving a bike underneath a stairwell in a common area after being asked to remove it. Niece issued the fines as an employee for McNary. A landlord may charge a fee for "[a]ny other noncompliance by the tenant with a written rental agreement that provides for a fee for that noncompliance, provided that the fee may not be excessive." Or. Rev. Stat. § 90.302(3)(d). Defendants include in the rental agreement a section discussing the financial terms of the agreement. The fees that are expressly stated are those for: 1) a returned check; 2) smoke detector tampering; 3) late fee; and 4) fee in case of eviction for each trip related to the action in addition to filing fees, prevailing party fees, and attorney fees. Line (e) of this section in the agreement states: "Other charges for _____ in the

amount of $_____." Line (f) simply states "Other: _____." The landlord had the opportunity to list any additional fees on the rental agreement and chose not to do so. Even assuming the fees were inappropriately charged, a question of fact remains as to whether those fees constitute a violation of the UDCPA. Clearly, the intention of the statute is to ensure that in the act of collecting debt, debt collectors do not try to add numerous fees and interest to the existing debt without notifying the debtor. Because the court cannot find as a matter of law that the fees in this case are not the type of fees that the statue was meant to prohibit, the question remains for the finder of fact.

More convincingly, the court finds that Or. Rev. Stat. § 646.639(2)(h) may have also been violated by Norris and RCS. Or. Rev. Stat. § 646.639(2)(h) makes it an unlawful collection practice for a debt collector, while collecting or attempting to collect a debt to "[c]ommunicate with the debtor in writing without clearly identifying the name of the debt collector, the name of the person, if any, for whom the debt collector is attempting to collect the debt and the debt collector's business address, on all initial communications." As discussed above, a question of fact remains as to whether defendants clearly identified the debt collector in their communications with plaintiffs.

Therefore, defendants' motion for summary judgment on

plaintiffs' claim pursuant to the UDCPA is denied.  Plaintiffs'
cross-motion on that claim is also denied.

Intentional Infliction of Emotional Distress

Plaintiffs concede defendants' motion for summary judgment
on this claim.  Therefore, defendants' motion for summary
judgment on plaintiffs' IIED claim is granted, and this
claim is dismissed.

CONCLUSION

Defendants' motion for summary judgment, or alternate motion
for partial summary judgment (doc. 20) is granted in part and
denied in part as follows: defendants' motion is granted as to
plaintiffs' claims for tortuous interference with economic
relations, breach of contract, defamation and IIED.  The
remainder of the defendants' motion is denied.  Plaintiffs'
cross-motion for partial summary judgment (doc. 27) is denied.
IT IS SO ORDERED.

Dated this  9   day of October 2007.


                    /s/ Ann Aiken
                    Ann Aiken
          United States District Judge